1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11   PHILLIP ANTHONY TRUJILLO,

12             Petitioner,

13        v.

14   RALPH M. DIAZ,

15             Respondent.

16

|  |  |
|---|---|
| | Case No.  1:13-cv-00848-AWI-SAB-HC |
| | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                                    **I.**

20                             **BACKGROUND**

21        Petitioner is currently in the custody of the California Department of Corrections and

22   Rehabilitation pursuant to a judgment of the Superior Court of California, County of Tulare,

23   following his conviction by jury trial on June 2, 2011, of two counts of forcible lewd acts on a

24   child under the age of 14 (Cal. Penal Code § 288(b)(1)), and three counts of lewd acts on a child

25   under the age of 14 (Cal. Penal Code § 288(a)).   Petitioner was sentenced to serve five

26   consecutive 15 years-to-life sentences.

27        Petitioner timely filed a notice of appeal.  On November 14, 2012, the California Court of

28   Appeal, Fifth Appellate District, affirmed the judgment.  Petitioner then filed a petition for

1

review in the California Supreme Court.   On January 23, 2013, the petition was summarily denied.

On May 14, 2013, Petitioner filed the instant federal habeas petition in the United States District Court for the Central District of California.   The petition was transferred to this Court on May 30, 2013.   The petition presents the following grounds for relief: (1) Petitioner argues that the evidence was insufficient to support the conviction; (2) He contends that the admission of uncharged sexual offenses and instruction CALCRIM No. 1191 violated his due process rights; (3) He claims the prosecutor committed misconduct during closing remarks; and (4) He claims the cumulative effect of the errors rendered his trial unfair.   On August 14, 2013, Respondent filed an answer to the petition.   On September 3, 2013, Petitioner filed a traverse.

## II.

## STATEMENT OF FACTS[1]

Alexis experienced a breakdown when she was 15 years old. She called a suicide hotline and told the counselor she had been molested when she was younger. A detective was dispatched to Alexis's home to investigate. Trujillo was identified as the person who had molested Alexis. Upon investigation, the detective learned that Trujillo had molested other children, including Brad and Chad.

On November 8, 2010, Trujillo was charged with two counts of a forcible lewd act on Brad, a child under the age of 14 years at the time the acts were committed, and three counts of lewd acts on Alexis, a child under the age of 14 years at the time of the commission of the acts. It also was alleged as to all five counts that Trujillo had substantial sexual contact with the child victims and that there were multiple victims.

Brad testified that when he was five or six years old, Trujillo told him to lie down on the couch. Brad complied and Trujillo inserted his penis into Brad's anus. Brad recalled two incidents when he was seven or eight years old. In one incident, Brad and Trujillo were in a room together when Trujillo pulled down his pants and made Brad orally copulate him. In another incident, Brad and Trujillo were in a camper and Trujillo again forced Brad to orally copulate him.

When Brad was 12, Trujillo grabbed Brad, pulled down his pants (Trujillo's) and inserted his penis into Brad's anus. Trujillo sodomized Brad several other times in a trailer. Trujillo also inserted his penis into Brad's mouth over five times. All of this was when Brad was 12.

---

[1] The Fifth District Court of Appeal's summary of the facts in its November 14, 2012, opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).  Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the state appellate court. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir.2009), cert. denied, 130 S.Ct. 1086 (2010) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

At trial, Alexis testified that Trujillo was friends with her uncle. When she was approximately seven years old, Alexis was on her uncle's couch and Trujillo reached under her clothing and touched her vagina. This happened multiple times. When Alexis was approximately 11 years old, Trujillo came up behind her, gave her a hug, and tried to touch her, saying, "it would be just like old times." Alexis stepped on his foot and locked herself in the bathroom.

Amber and Chad testified about uncharged sexual offenses committed by Trujillo. Amber testified that when she was five, she lived next door to Trujillo; Trujillo was about 14 years old. Amber went to Trujillo's house to visit his sister; Trujillo led her to a camper in the backyard. While in the camper, Trujillo pulled down her underpants and put his mouth on Amber's vagina.

Trujillo admitted to the investigating detective that he had placed his mouth and tongue on Amber's vagina. Trujillo claimed, however, that five-year-old Amber initiated the sexual touching.

Chad testified that when he was about nine years old, Trujillo took him to the side of the house and made him orally copulate Trujillo. Chad recalled "vomiting really bad."

(Resp't's Answer, Ex. A.)

## III.

## DISCUSSION

A.    <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of Tulare County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Standard of Review

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.  In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA.  Moses v. Payne, 555 F.3d 742, 754 (9th Cir.2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.  Carey, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ

if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Id</u>. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir.2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Harrington</u>, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. <u>Id</u>. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the

1  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

2  state court decision is objectively unreasonable.  See LaJoie v. Thompson, 217 F.3d 663, 669

3  (9th Cir.2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

4      The AEDPA requires considerable deference to the state courts.  "[R]eview under §

5  2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

6  the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review."

7  Cullen v. Pinholster, __ U.S. __, __, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations

8  by state courts are presumed correct absent clear and convincing evidence to the contrary."

9  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a

10  state court factual finding is not entitled to deference if the relevant state court record is

11  unavailable for the federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963),

12  overruled by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

13      C.    Review of Claims

14      **1.    Sufficiency of the Evidence**

15      Petitioner first claims that the evidence was insufficient to find him guilty.  He contends

16  that the evidence was generic in nature, and because of this, the jury could not have unanimously

17  agreed on which specific criminal act he committed, which violated his due process rights.  He

18  also argues that no "solid real proof evidence like DNA, medical, and/or physical evidence" was

19  presented.  (See Petition at 10.)

20      This claim was first presented on direct appeal to the Fifth District Court of Appeal.  The

21  claim was denied in a reasoned decision on November 14, 2012.  Petitioner then raised the claim

22  to the California Supreme Court in a petition for review.  The petition was denied without

23  comment.  When the California Supreme Court's opinion is summary in nature, the Court must

24  "look through" that decision to a court below that has issued a reasoned opinion.  Ylst v.

25  Nunnemaker, 501 U.S. 797, 804-05 & n. 3 (1991).  Here, the appellate court analyzed and

26  rejected the claims as follows:

27      In reviewing a challenge to the sufficiency of the evidence, appellate courts do not
       determine the facts. We examine the record as a whole in the light most favorable
28      to the judgment and presume the existence of every fact the trier of fact

reasonably could deduce from the evidence in support of the judgment. (*People v. Lee* (2011) 51 Cal.4th 620, 632; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid.Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Count 1 pertained to Trujillo's sodomizing Brad, and count 2 pertained to Trujillo forcing Brad to orally copulate him. At trial Brad testified that Trujillo forced his penis into his (Brad's) mouth. Brad then was asked to recall the number of times he had been forced by Trujillo to perform oral copulation on him; Brad testified it was over five times.

The convictions on counts 3, 4, and 5 were for lewd acts against Alexis. Alexis testified that when she was approximately seven years old, while she was lying on the couch, Trujillo "stuck his hand up and started touching" her "private parts." When she referred to her private parts, she meant her vagina. She testified that Trujillo touched her vagina "[s]everal different times," "[a]round like four" times or "a couple times." She also acknowledged that when interviewed previously by a detective, she told the detective it happened five or six times.

Trujillo argues that the testimony described was insufficient because it did not provide him with sufficient particularity to allow him to defend himself, thus violating his due process rights. He recognizes in his opening brief that this argument failed in the California Supreme Court in *People v. Jones* (1990) 51 Cal.3d 294, which found "generic testimony" regarding child molestation "is sufficiently substantial from an evidentiary standpoint. [*Citations*.]" (*Id*. at pp. 313–314.) The victim must be able to describe (1) the kind of act or acts committed with sufficient specificity to assure unlawful conduct has occurred and to differentiate between types of conduct, (2) the number of acts with sufficient certainty to support the number of counts, and (3) the general time period to assure the acts were committed within the applicable statute of limitations. (*Id*. at p. 316.)

Here, the testimony of Brad and Alexis contained the three components described in *Jones*. Thus, Brad's testimony regarding the forced oral copulation of Trujillo was sufficient to support the count 2 conviction, and Alexis's testimony regarding the multiple times Trujillo touched her vagina under her clothing supported the convictions on counts 3, 4, and 5, despite some confusion on her part as to the number of times the touching occurred. It is for the jury to resolve conflicts in testimony or issues of credibility and it is of no consequence a jury might have reached a contrary conclusion by believing other evidence, or drawing other reasonable inferences. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.)

Trujillo, however, also argues that this court should not credit the decision in *Jones* because it undermines the requirement for juror unanimity. This contention fails as *Jones* applies here and is binding upon this court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

(See Resp't's Answer, Ex. A.)

   The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be

1  drawn from it in the light most favorable to the prosecution, any rational trier of fact could find

2  the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.

3  307, 319 (1979).  Sufficiency claims are judged by the elements defined by state law.  Id. at 324

4  n.16.  On federal habeas review, AEDPA requires an additional layer of deference to the state

5  decision.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.2005).  This Court must determine

6  whether the state decision was an unreasonable application of the Jackson standard.

7      As noted above, the Fifth District Court of Appeal concluded it was bound by the

8  California Supreme Court's ruling in People v. Jones, 51 Cal.3d 294 (1990), which affirmed

9  convictions for lewd and lascivious acts on children under the age of 14 based on generic

10  evidence of guilt lacking specific reference to a time or place.  Id. at 305.  Acknowledging that

11  "[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems," the

12  California Supreme Court held that generic testimony resulting in a conviction under California

13  Penal Code section 288(a) did not violate a defendant's due process rights.  Id.  The California

14  Supreme Court noted that "even generic testimony (e.g., an act of intercourse 'once a month for

15  three years') outlines a series of specific, albeit undifferentiated, incidents each of which could

16  support a separate criminal sanction."  Id. at 314.  It described the requirements that such

17  testimony must meet as:

18
19
20
21
22
23
24
[t]he victim, of course, must describe the kind of act or acts committed with
sufficient specificity, both to assure that unlawful conduct indeed has occurred
and to differentiate between the various types of proscribed conduct (e.g. lewd
conduct, intercourse, oral copulation or sodomy).  Moreover, the victim must
describe the number of acts committed with sufficient certainty to support each of
the counts alleged in the information or indictment (e.g., 'twice a month' or
'every time we went camping').  Finally, the victim must be able to describe the
general time period in which these acts occurred (e.g., 'the summer before my
fourth grade,' or 'during each Sunday morning after he came to live with us') to
assure the acts were committed within the applicable limitation period. Additional
details regarding the time, place or circumstance of the various assaults may assist
in assessing the credibility or substantiality of the victim's testimony, but are not
essential to sustain a conviction.

25  Id. at 316; see also U.S. v. Hawpetoss, 388 F.Supp.2d 952, 965 (E.D.Wis.2005) (court persuaded

26  by California's Supreme Court's analysis).

27      In this case, there was sufficient evidence of specific instances of molestation.  Brad A.'s

28  testimony concerning Petitioner's acts of placing his penis in the Brad A.'s anus, and causing

Brad A. to place his mouth on Petitioner's penis, provided sufficient evidence of the time, place, and circumstances.  As to the first charged offense, Brad A. testified that he was five or six years old at the time.  (RT[2] 75.)  He stated the incident occurred at his home in Exeter.  (RT 75.)  He testified that he was lying on a couch when Petitioner came up to him, lay down next to him, and proceeded to molest him by placing his penis in his anus.  (RT 77.)  As to the second charged offense, Brad A. recalled that the incident occurred while he was living with his family at their home in Goshen.  (RT 77.)  He remembered that he and Petitioner were in a room with the door closed when Petitioner called him over, pulled his pants down, pushed his head down, and forced him to suck his penis. (RT 78-79.)  These facts provided ample specificity of time, place, and circumstances of the charged acts concerning Brad A.

The other three counts concerned Alexis R.  Rose Rivas testified that Alexis R. was her granddaughter.  (RT 52.)  She testified that she took care of Alexis R. from the time she was an infant. (RT 52.)  When Alexis R. was seven years old, Miss Rivas would drop her off at her brother's home in Ivanhoe between the hours of 5:00 a.m. to 1:30 p.m. while she was at work. (RT 53.)  Miss Rivas recalled that during this time, Petitioner would often stay at her brother's home.  (RT 54.)  Alexis testified that she recalled living with her grandmother in Ivanhoe when she was seven years old.  (RT 57.)  She further recalled being dropped off at her uncle's home while her grandmother went to work.  (RT 58.)  Alexis testified that while she stayed at her uncle's home, Petitioner would be there "a couple times a week or a couple times a month."  (RT 59.)  Alexis stated that when she would be dropped off early in the morning, she would usually lie down on a couch and go to sleep.  (RT 59.)  She testified that on "several different times," Petitioner would place his hand under her clothes while she was on the couch and touch her vagina. (RT 59-61.)  When pressed further about the number of occurrences, she stated: "Around like four. It happened a couple times."  (RT 60.)  She recalled telling the detective that the molestations occurred five to six times.  (RT 60.)  She also recalled an incident when she was eleven years old.  She was at her uncle's house when Petitioner came up behind her, grabbed her,

---

[2] "RT" refers to the Reporter's Transcript on Appeal.

attempted to touch her, and told her "it would be just like old times." (RT 63.)  She then stepped on his foot, ran to the bathroom, and locked the door.  (RT 63.)  In light of Miss Rivas' and Alexis' testimony, there was sufficient evidence setting forth the time, place, and circumstances of the charged offenses.  With respect to Petitioner's claim concerning Alexis' recollections on the number of occurrences, as stated by the appellate court, it was for the jury to resolve the conflicts in her testimony.  Regardless, there was sufficient evidence from which a rational trier of fact could have found the three charged instances of molestation.

Furthermore, Petitioner has cited no United States Supreme Court precedent regarding the use of generic testimony in cases such as his, and the Court has found none.  Additionally, the jury was instructed that in order to return a guilty verdict, all jurors had to agree that defendant committed the same act or acts.  The jury returned a verdict finding that Petitioner violated California Penal Code § 288(a) with respect to Alexis R. and § 288(b)(1) with respect to Brad A.  (CT[3] 201-210.)   Pursuant to the jury instruction, this meant all the jurors had agreed that he committed the same act or acts of molestation.  Greer v. Miller, 483 U.S. 756, 766, n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (presumption that juries follow instructions).

In the petition and again in his traverse, Petitioner complains of the lack of physical evidence.  However, the lack of physical evidence does not render the evidence presented insufficient.  Rather, the lack of physical evidence goes to the weight and credibility to be afforded to the testimonial evidence, and such a determination is a matter for the jury.  United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir.1997) ("The weight is a matter for argument to the jury, not a ground for reversal on appeal.").

For these reasons, the state court decision to uphold Petitioner's conviction was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  See Carey, 549 U.S. 70.  The claim should be rejected.

**2.      Admission of Uncharged Offenses and CALCRIM No. 1191**

Petitioner next alleges the trial court violated his due process rights by admitting

---

[3] "CT" refers to the Clerk's Transcript on Appeal.

uncharged sex offenses and instructing the jury with CALCRIM No. 1191.  This claim was also presented on direct appeal to the Fifth District Court of Appeal where it was denied in a reasoned decision on November 14, 2012.  He then raised the claim to the California Supreme Court in a petition for review.  The petition was denied without comment.  Accordingly, the Court must "look through" to the decision of the court below.  Ylst, 501 U.S. at 804-05 & n. 3.  The appellate court analyzed and rejected the claims as follows:

> Trujillo claims that admission of uncharged sexual offenses was an abuse of discretion and that instructing the jury with CALCRIM No. 1191 was a violation of his due process rights. We conclude that he has forfeited any challenge to the admissibility of this evidence.
>
> *Admissibility*
>
> Prior to trial, the People moved to admit testimonial evidence of prior uncharged sexual offenses pursuant to Evidence Code sections 1108 and 1101. (All further statutory references are to the Evidence Code unless otherwise stated). Specifically, the People sought to admit evidence of four uncharged offenses: (1) oral copulation of Amber; (2) forcing Chad to orally copulate Trujillo; (3) oral copulation of Brad and sodomizing Brad; and (4) attempted molestation of Alexis.
>
> The trial court conducted a section 352 hearing and concluded the probative value would not be outweighed by the danger of undue prejudice. During the hearing, Trujillo's counsel stated, "I'll object and submit it." The basis of the objection never was specified.
>
> Although defense counsel objected to admission of the uncharged misconduct evidence, he did not state the basis of the objection during the section 352 hearing. When the testimony was presented during the trial, defense counsel raised no objection whatsoever when the witnesses were questioned about prior uncharged sexual misconduct committed by Trujillo. The only objections made pertained to matters other than Trujillo's prior sexual misconduct. As an example, an objection was made on the basis of vagueness to a question asking a witness to describe "growing up in the Trujillo household."
>
> Any objection to the admissibility or relevancy of the prior uncharged sexual acts under section 352, 1101, or 1108 is forfeited because Trujillo failed to preserve any objection at trial. "A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself. [*Citations.*]" (*People v. Holloway* (2004) 33 Cal.4th 96, 133.)
>
> It is a well-established principle of jurisprudence that only points that were raised and ruled on in the trial court are cognizable on appeal. (§ 353; *People v. Clark* (1993) 5 Cal.4th 950, 988, fn. 13.) To preserve an evidentiary issue for appellate review, timely objection must have been interposed on the same ground during trial. (*People v. Hill* (1992) 3 Cal.4th 959, 989.) Since the evidentiary claim presented in this appeal was not raised and ruled on during trial, the point was not preserved for appellate review. (*People v. Kirkpatrick* (1994) 7 Cal.4th 988,

1014–1015.)

> Likewise, the challenge to admissibility of the evidence on constitutional due process grounds is forfeited. "An appellate contention that the erroneous admission or exclusion of evidence violated a constitutional right is not preserved in the absence of an objection on that ground below. [*Citations*.]" (*People v. Daniels* (2009) 176 Cal.App.4th 304, 320, fn. 10.) No objection on the basis of a violation of constitutional rights ever was raised.

> We also note the California Supreme Court expressly has rejected this contention on the merits. In *People v. Falsetta* (1999) 21 Cal.4th 903, 915–922, the court held that evidence of uncharged sexual offenses admitted pursuant to section 1108 does not violate a defendant's rights to due process.

> *Jury Instruction*

> Trujillo's claim of error concerning instructing the jury with CALCRIM No. 1191 [Footnote omitted] also fails. This instruction tells the jury how to consider evidence of uncharged sexual offenses, including that the truth of the offenses must be proven by a preponderance of the evidence. Trujillo's contention is not unique. Various versions of this instruction, and the burden of proof, have been challenged many times. But, as he acknowledges in his opening brief, this contention has been rejected by the California Supreme Court in *People v. Reliford* (2003) 29 Cal.4th 1007, 1013. We are bound by this decision.

(See Resp't's Answer, Ex. A.)

    a.    Procedural Default

Respondent claims Petitioner has procedurally defaulted his claim concerning the uncharged sexual offenses because Petitioner did not contemporaneously object to the evidence at trial.

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst, 501 U.S. at 801; Coleman v. Thompson, 501 U.S. 722, 729-30 (1989). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32.

There are limitations as to when a federal court should invoke procedural default and refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly

1  states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263. For California

2  Supreme Court decisions, this means the Court must specifically have stated that it denied relief

3  on a procedural ground. Ylst, 501 U.S. at 803; Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th

4  Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme

5  Court denies a petitioner's claims without any comment or citation, the federal court must

6  consider that it is a decision on the merits. Hunter, 982 F.2d at 347-48.

7       In addition, a federal court may only impose a procedural bar on claims if the procedural

8  rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v.

9  Thompson, 502 U.S. 995, 998 (1991); Ford v. Georgia, 498 U.S. 411, 423-24 (1991); James v.

10 Kentucky, 466 U.S. 341, 348-51 (1984). The state procedural rule used must be clear,

11 consistently applied, and well-established at the time of the petitioner's purported default. Fields

12 v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96

13 F.3d 112, 129 (9th Cir. 1996).

14      In this case, the appellate court rejected the claim in accordance with California's

15 contemporaneous objection rule, because the defense failed to object to the evidence at the time

16 it was presented. In Wainwright v. Sykes, 433 U.S. 72 (1977), the United States Supreme Court

17 held that if state procedure requires contemporaneous objections to preserve an issue for

18 appellate review, the failure to interpose a contemporaneous objection bars federal habeas review

19 under the doctrine of independent and adequate state procedural grounds. Id. at 87-88. The

20 Ninth Circuit has noted that California's contemporaneous objection rule is consistently applied

21 independent of federal law. Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir.2002); Vansickel

22 v. White, 166 F.3d 953, 957 (9th Cir.1999).

23      If the court finds an independent and adequate state procedural ground, "federal habeas

24 review is barred unless the prisoner can demonstrate cause for the procedural default and actual

25 prejudice, or demonstrate that the failure to consider the claims will result in a fundamental

26 miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501

27 U.S. at 750. In this case, Petitioner has not shown that any external factor prevented defense

28 counsel from objecting. In addition, Petitioner does not demonstrate actual prejudice resulting

1   from the failure to object.

2       Petitioner has also failed to demonstrate that a fundamental miscarriage of justice will

3   occur if the claim is barred from federal review.  The miscarriage of justice inquiry is governed

4   by the standard set forth in Murray v. Carrier, 477 U.S. 478 (1986).  Murray requires a habeas

5   petitioner to show that "a constitutional violation has probably resulted in the conviction of one

6   who is actually innocent." Id. at 496.  To satisfy Murray's "actual innocence" standard, a

7   petitioner must show that, in light of new evidence, it is more likely than not that no reasonable

8   juror would have found him guilty beyond a reasonable doubt.  Id.  Here, Petitioner makes no

9   such showing of actual innocence.

10      Accordingly, Petitioner is procedurally barred from bringing this claim. In any case,

11  Petitioner's claim is without merit.

12          b.      Merits

13      The admissibility of evidence is generally an issue of state law which does not warrant

14  habeas relief.  Estelle, 502 U.S. at 67. "The issue for us, always, is whether the state proceedings

15  satisfied due process; the presence or absence of a state law violation is largely beside the point."

16  Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9thCir.1991).  "The admission of evidence does

17  not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation

18  of due process." Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir.1995) (citing Estelle, 502 U.S. at

19  67-68).

20      As noted by Respondent, there is no Supreme Court precedent governing a court's

21  discretionary decision to admit evidence as a violation of due process.  In Holley v. Yarborough,

22  568 F.3d 1091, 1101 (9th Cir.2009), the Ninth Circuit stated:

23      The Supreme Court has made very few rulings regarding the admission of
        evidence as a violation of due process. Although the Court has been clear that a
24      writ should be issued when constitutional errors have rendered the trial
        fundamentally unfair, see Williams, 529 US. at 375, 120 S.Ct. 1495, it has not yet
25      made a clear ruling that admission of irrelevant or overtly prejudicial evidence
        constitutes a due process violation sufficient to warrant issuance of the writ.
26      Absent such "clearly established Federal law," we cannot conclude that the state
        court's ruling was an "unreasonable application." Musladin, 549 U.S. at 77, 127
27      S.Ct. 649. Under the strict standards of AEDPA, we are therefore without power
        to issue the writ . . . .
28

Given that there is no governing Supreme Court precedent, Petitioner cannot demonstrate that the state court denial of his claim was contrary to or involved an unreasonable application of Supreme Court precedent. The claim should be rejected.

With respect to Petitioner's claim concerning CALCRIM No. 1191, Petitioner fails to demonstrate that the instruction violated his due process rights.  The Supreme Court has held that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 71 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438, n. 6 (1983)) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules").  Federal habeas courts therefore do not grant relief simply because an instruction may have been deficient.  Estelle, 502 U.S. at 72.  The only question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, supra, 414 U.S. at 147).  In addition, juries are presumed to have followed their instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  And in reviewing the instruction, the court must inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  Boyde v. California, 494 U.S. 370, 380 (1990).  Even if constitutional instructional error has occurred, the federal court must still determine whether Petitioner's suffered actual prejudice, that is, whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Respondent correctly notes that the Ninth Circuit has held that the California Court of Appeal did not act contrary to federal law in upholding the 2002 version of CALJIC No. 2.50.01. Schultz v. Tilton, 659 F.3d 941, 945 (9th Cir. 2011).  The Ninth Circuit stated that "the 2002

1 version of CALJIC No. 2.50.01 in no way suggests that a jury could reasonably convict a

2 defendant for charged offenses based merely on a preponderance of the evidence." Id. It found

3 that "the instruction given . . . was unambiguous and made clear that [the defendant] could be

4 convicted only if the evidence as a whole 'proved [him] guilty beyond a reasonable doubt of the

5 charged crime.'" Id. CALCRIM No. 1191 is a restatement of CALJIC No. 2.50.01. In the same

6 way, CALCRIM No. 1191 does not suggest that a defendant can be convicted based upon a

7 preponderance of the evidence; rather, it clearly requires that the jury must find each element of

8 every charge beyond a reasonable doubt.

9      Accordingly, Petitioner fails to demonstrate that the state court was unreasonable in

10 determining that CALCRIM No. 1191 was not applied in a way that violated the Constitution.

11 The claim should be rejected.

12     **3.**     **Prosecutorial Misconduct**

13      In his next claim for relief, Petitioner argues that the prosecutor committed misconduct

14 during closing remarks. This claim was also presented on direct appeal to the Fifth District

15 Court of Appeal. The claim was then raised to the California Supreme Court where it was

16 denied without comment. Therefore, the Court must review the opinion of the appellate court

17 insofar as it was the last reasoned decision. Ylst, 501 U.S. at 804-05 & n. 3. The Fifth District

18 Court of Appeal denied the claim as follows:

19
20     Trujillo contends that the prosecutor committed misconduct during closing
argument. We conclude the comments complained of were harmless.

21     During his initial closing argument, the prosecutor stated:

22
23     "Those little kids, three of them now are adults, one of them is still a minor, the
two victims that are named you know there's going to be scars on their lives
permanently from that. I'm not here today to ask you to fix what's been done
because frankly we all know that we can't go back and change what's happened.
24 We can't fix those people. We can't fix the things that have been done to them.
But for the sake of humanity and doing what's right and righteousness and
25 goodness and justice—"

26     At that point, defense counsel objected and the trial court sustained the objection
stating, "it is appealing to the passions of the jury."

27     In his rebuttal argument, the prosecutor stated, "Now I had a quote I was gonna
show you the other day. And the quote is simply this, 'Is there anything worse
28 than destroying the innocence of a child.'" Defense counsel objected, but, before

the trial court could rule, the prosecutor stated, "I want you to think about that." The trial court overruled the objection stating it was "argument."

[A] prosecutor's ... intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'" [*Citations.*] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" [*Citation.*] As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground— the defendant [requested] an assignment of misconduct and [also] requested that the jury be admonished to disregard the impropriety. [*Citation.*] Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." [*Citation.*]' [*Citations.*]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1263–1264.)

Trujillo contends the comments of the prosecutor were inappropriate appeals to the sympathy or passions of the jury and were prejudicial. The first objection by defense counsel was sustained, but no curative admonition was requested. "To preserve a [prosecutorial] misconduct claim for appellate review, a defendant must make a timely objection and ask the trial court to admonish the jury to disregard the remark (or conduct) unless such an admonition would not have cured the harm. [*Citation.*]" (*People v. Booker* (2011) 51 Cal.4th 141, 184.) Trujillo did not request a curative admonition and has failed to demonstrate that the jury would have disregarded a curative admonition. (*People v. Green* (1980) 27 Cal.3d 1, 27.)

The second objection was overruled as simply constituting argument. Presumably, the jurors understood that the prosecutor and defense counsel were advocates, not neutral, disinterested parties. (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.) In any event, the passing comment was not prejudicial, nor did it deprive Trujillo of a fundamentally fair trial. (*People v. Bell* (1989) 49 Cal.3d 502, 542.)

Even if we were to view the prosecutor's remarks as inappropriate, there is no indication the jury construed or applied the remarks contrary to the trial court's instructions. A jury is presumed to follow a court's instruction in the absence of any indication that it was unwilling or unable to do so. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 196.) The jurors were instructed that comments from counsel were not evidence and that they were to decide the case based upon the evidence, not bias, sympathy, prejudice, or public opinion. Here, there is no evidence in the record, and Trujillo has cited none, indicating the jury was unwilling or unable to follow instructions.

Accordingly, we reject Trujillo's claim of prejudicial prosecutorial misconduct. (*People v. Foster* (2010) 50 Cal.4th 1301, 1354 [Supreme Court rejected the defendant's assertion that he did not forfeit claim of prosecutorial misconduct by his failure to object and seek curative admonition where the defendant did not explain why a curative admonition would not have cured any harm].)

(See Resp't's Answer, Ex. A.)

a.   <u>Procedural Default</u>

Respondent contends that the claim is procedurally defaulted because Petitioner failed to request a curative admonition and therefore failed to preserve the argument.   Respondent's argument is persuasive.   Petitioner failed to request a curative admonition at trial; therefore, he has defaulted this particular claim of error under California's contemporaneous objection rule. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991) (holding that federal habeas review of a claim is barred in all cases where a state prisoner has defaulted his federal claim in state court pursuant to an adequate and independent state procedural rule).   Accordingly, the claim is procedurally defaulted and barred from federal habeas review.   In any case, Petitioner's argument is again without merit.

b.   <u>Merits</u>

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).   To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer v. Miller</u>, 485 U.S. 756, 765 (1987) (quoting <u>United States v. Bagley</u>, 473 U.S. 667 (1985)).   Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. <u>Id</u>. at 765-66; <u>United States v. Weitzenhoff</u>, 35 F.3d 1275, 1291 (9th Cir. 1994).   The court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).   "Improper argument does not, per se, violate a defendant's constitutional rights." <u>Thompson v. Borg</u>, 74 F.3d 1571, 1576 (9th Cir. 1996) (quoting <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1191 (9th Cir.1993)).   If prosecutorial misconduct is established, and it was constitutional error, the error must be evaluated pursuant to the harmless error test set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). <u>See</u> <u>Thompson</u>, 74 F.3d at 1577 ("Only if the argument were constitutional error would we have to decide whether the constitutional error was

1  harmless.").

2          In this case, the state court could reasonably determine that the prosecutor's remarks were

3  not so unfair as to deny Petitioner a fair trial.  The trial court sustained the defense objection to

4  the prosecutor's remarks and admonished, "it is appealing to the passions of the jury."  The

5  second objection was overruled as fair argument.  "[I]n fashioning closing arguments,

6  prosecutors are allowed reasonably wide latitude and are free to argue reasonable inferences

7  from the evidence."  United States v. McChristian, 47 F.3d 1499, 1507 (9th Cir.1995).

8  Nonetheless, the jury was instructed not to "let bias, sympathy, prejudice, or public opinion

9  influence your decision." (RT 116.)  The jury was further instructed that "[n]othing that the

10 lawyers say is evidence."  (RT 120.)  Jurors are presumed to follow their instructions.  Greer v.

11 Miller, 483 U.S. 756, 757 n. 8 (1987).  It is reasonable to conclude that the jurors understood the

12 prosecutor's remarks, coming from an advocate, were not neutral and merely argument.  In

13 addition, the remarks were isolated, brief, and not so inflammatory as to cause the jury to

14 disregard its instructions and find Petitioner guilty out of sympathy for the victims.

15         In sum, it cannot be said that no fair-minded jurist would find the state court's conclusion

16 that the prosecutor's remarks did not deny Petitioner a fair trial to be contrary to, or an

17 unreasonable application of, Supreme Court authority.  Harrington, 131 S.Ct. at 784.  The claim

18 should be rejected.

19         **4.     Cumulative Error**

20         In his final claim for relief, Petitioner alleges the trial was rendered fundamentally unfair

21 due to cumulative error.

22         The Supreme Court has clearly established that the combined effect of multiple trial court

23 errors violates due process where it renders the resulting criminal trial fundamentally unfair.

24 Chambers v. Mississippi, 410 U.S. 284, 298, 302–03 (1973) (combined effect of individual

25 errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due

26 process" and "deprived Chambers of a fair trial").  The cumulative effect of multiple errors can

27 violate due process even where no single error rises to the level of a constitutional violation or

28 would independently warrant reversal.  Id. at 290 n. 3.  Under traditional due process principles,

1  cumulative error warrants habeas relief only where the errors have "so infected the trial with

2  unfairness as to make the resulting conviction a denial of due process."  <u>Donnelly</u>, 416 U.S. at

3  643.  Such "infection" occurs where the combined effect of the errors had a "substantial and

4  injurious effect or influence on the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637.  In simpler terms,

5  where the combined effect of individually harmless errors renders a criminal defense "far less

6  persuasive than it might [otherwise] have been," the resulting conviction violates due process.

7  <u>See</u> <u>Chambers</u>, 410 U.S. at 294, 302–03.

8       In this case, however, none of the claims raised by Petitioner have merit.  Accordingly,

9  Petitioner cannot demonstrate prejudice resulting from the cumulative effect of the errors,

10  because there are no errors affecting the verdict to accumulate.  <u>United States v. Jeremiah</u>, 493

11  F.3d 1042, 1047 (9th Cir.2007).  The claim should be rejected.

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# IV.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that this action be DENIED WITH PREJUDICE.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __October 17, 2013__                                                    _____
                                                                                                         UNITED STATES MAGISTRATE JUDGE